# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

LEROY MORRELL,

                Plaintiff,

    v.

SGT. GLENN R. SAMPSON AND
C.O. PATRICK H. BOULTER,

           Defendants.

Case No.
9:22-cv-0713

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

**Sivin, Miller & Roche LLP**
Attorneys for Plaintiff
20 Vesey Street, Suite 1400
New York, NY 10007
(212) 349-0300

# TABLE OF CONTENTS

TABLE OF AUTHORITIES......................................................................... ii

PRELIMINARY STATEMENT................................................................1

STATEMENT OF FACTS .......................................................................1

ARGUMENT...........................................................................................5

    I.    Summary Judgment Standard ..........................................................5

    II.   Eighth Amendment Standard ...........................................................5

    III.  Failure to Protect vs. Failure to Intervene ......................................7

       A.   Failure to Protect .......................................................................9

          i.   The Objective Element (Substantial Risk of Harm)..............10

          ii.  The Subjective Element (Culpable State of Mind) ...............13

       B.   Failure to Intervene ..................................................................17

    IV.  Qualified Immunity ........................................................................22

CONCLUSION .......................................................................................27

## TABLE OF AUTHORITIES

**Cases**                                                    **Page(s)**

*Anderson v. Creighton,*
   483 U.S. 635 (1978) ................................................................................24

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) ..................................................................................5

*Arnold v. Cty. of Nassau,*
   252 F.3d 599 (2d Cir. 2001) ...................................................................12

*Blake v. Kelly,*
   2014 U.S. Dist. LEXIS 119090 (S.D.N.Y. 2014) ..................................20

*Blake v. Sexton,*
   2016 U.S. Dist. LEXIS 38798 (S.D.N.Y. 2016) ................................17, 25, 26

*Blyden v. Mancusi,*
   186 F.3d 252 (2d Cir. 1999) .....................................................................6

*Bradshaw v. Fletcher,*
   2023 U.S. Dist. LEXIS 31096 (N.D.N.Y. 2023)......................................8

*Brock v. Wright,*
   315 F.3d 158 (2d Cir. 2003) ...................................................................11

*Brown v. Chappius,*
   2016 U.S. Dist. LEXIS 107149 (W.D.N.Y. 2016).................................19

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986).................................................................................5

*Cepero v. High Desert State Prison,*
   2015 U.S. Dist. LEXIS 37838 (D. Nev. 2015) .....................................12

*Crawford-El v. Britton,*
   523 U.S. 574 (1998)................................................................................23

*Darnell v. Pineiro,*
   849 F.3d 17 (2d Cir. 2017) ................................................................9, 25

*Davidson v. Cannon,*
   474 U.S. 344 (1986)................................................................................11

*Dean v. Doe,*
   2017 U.S. Dist. LEXIS 78266 (W.D.N.Y. 2017)..................................12

*Dean v. Robinson,*
    2023 U.S. Dist. LEXIS 26470 (W.D.N.Y. 2023) .......................................12, 15

*Dennis v. Westchester Cty. Jail Corr. Dep't,*
    485 Fed. App'x 478 (2d Cir. 2012) ..................................................................25

*Denton v. McKee,*
    332 F. Supp. 2d 659 (S.D.N.Y. 2004)..............................................................23

*Dizak v. Hawks,*
    2015 U.S. Dist. LEXIS 176283 (N.D.N.Y. 2015)..............................................6

*Farmer v. Brennan,*
    511 U.S. 825 (1994)............................................................................... passim

*Fincher v. Depository Tr. & Clearing Corp.,*
    604 F.3d 712 (2d Cir. 2010) ............................................................................14

*Fischl v. Armitage,*
    128 F.3d 50 (2d Cir. 1997) ..............................................................................15

*Fredricks v. Parrilla,*
    2022 U.S. Dist. LEXIS 138038 (S.D.N.Y. 2022) .............................................8

*Garcia v. Witkowski,*
    988 F. Supp. 2d 360 (W.D.N.Y. 2013) .......................................................9, 13

*George v. Burton,*
    2001 U.S. Dist. LEXIS 24 (S.D.N.Y. 2001) ...................................................10

*Gochnour v. Burri,*
    2018 U.S. Dist. LEXIS 239794 (W.D.N.Y. 2018) ........................................7, 8

*Gordon v. Drummond,*
    2021 U.S. Dist. LEXIS 220512 (S.D.N.Y. 2021) ...........................................23

*Hayes v. New York City Dep't of Corr.,*
    84 F.3d 614 (2d Cir. 1996) ...................................................................5, 9, 25

*Heisler v. Kralik,*
    981 F. Supp. 830 (S.D.N.Y. 1997)...................................................................20

*Hill v. City of New York,*
    2005 U.S. Dist. LEXIS 38926 (E.D.N.Y. 2005)..............................................17

*Horan v. Collins,*
    2016 U.S. Dist. LEXIS 105046 (M.D. Pa. 2016) ...........................................12

*Jefferson v. Reddish,*
    718 F. App'x 94 (2d Cir. 2018) .......................................................23

*Jenkins v. Officer S.,*
    2021 U.S. Dist. LEXIS 183276 (S.D.N.Y. 2021) .................................... 15, 24

*Jhagroo v. Brown,*
    2020 U.S. Dist. LEXIS 13430 (S.D.N.Y. 2020) ................................ 15, 25, 26

*Johnson v. Eigo,*
    2021 U.S. Dist. LEXIS 120743 (N.D.N.Y. 2021)...........................................11

*Johnson v. Lee,*
    2019 U.S. Dist. LEXIS 251595 (N.D.N.Y. 2019)...........................................8

*Jones v. Treubig,*
    963 F.3d 214 (2d Cir. 2020) ...........................................................23

*Lewis v. Siwicki,*
    944 F.3d 427 (2d Cir. 2019) ...........................................................10

*Lloyd v. City of New York,*
    246 F. Supp. 3d 704 (S.D.N.Y. 2017)...................................................23

*Locurto v. Safir,*
    264 F.3d 154 (2d Cir. 2001) ...........................................................22

*Matagrano v. LeVitt,*
    2023 U.S. Dist. LEXIS 110110 (W.D.N.Y. 2023) .................................... 13, 14

*Matthews v. Armitage,*
    36 F. Supp. 2d 121 (N.D.N.Y 1999)...................................................14

*McCoy v. Goord,*
    255 F. Supp. 2d 233 (S.D.N.Y. 2003)...................................................20

*McPherson v. Coombe,*
    174 F.3d 276 (2d Cir. 1999) ............................................................9

*Mills v. Fenger,*
    216 F. App'x 7 (2d Cir. 2006).........................................................14

*Mirabella v. Corr. Officer O'Keenan,*
    2016 U.S. Dist. LEXIS 120811 (W.D.N.Y. 2016) .................................... 12, 15

*Mirabella v. O'Keenan,*
    2018 U.S. Dist. LEXIS 130019 (W.D.N.Y. 2016) .............................. 13, 20, 21

*Morales v. New York State Dep't of Corrections,*
   842 F.2d 27 (2d Cir. 1988) ................................................................ 6, 9, 11, 25

*Murphy v. L.A. Spaulding,*
   2022 U.S. Dist. LEXIS 18267 (S.D.N.Y. 2022) ............................................ 14

*Nagle v. Marron,*
   663 F.3d 100 (2d Cir. 2011) .................................................................. 25

*Newkirk v. Cnty. of Suffolk,*
   2022 U.S. Dist. LEXIS 48686 (E.D.N.Y. 2022) .......................................... 24

*Okin v. Vill. of Cornwall-on-Hudson Police Dep't,*
   577 F.3d 415 (2d Cir. 2009) .................................................................. 25

*Paul v. LaValley,*
   712 F. App'x 78 (2d Cir. 2018) ............................................................... 25

*Pearson v. Correction Officer Principe,*
   1999 U.S. Dist. LEXIS 1294 (S.D.N.Y. 1999) ............................................ 19

*Powell v. Nat'l Bd. of Med. Exam'rs,*
   364 F.3d 79 (2d Cir. 2004) ...................................................................... 5

*Robinson v. Taylor,*
   2017 U.S. Dist. LEXIS 137233 (N.D.N.Y. 2017)......................................... 23

*Rosen v. City of New York,*
   667 F. Supp. 2d 355 (S.D.N.Y. 2009).......................................... 8, 17, 18, 19

*Ross v. Correction Officers John & Jane Does 1-5,*
   610 F. App'x 75 (2d Cir. 2015)................................................................ 9, 11

*Ruderman v. Law Office of Yuriy Prakhin,*
   2022 U.S. Dist. LEXIS 244375 (E.D.N.Y. 2022) ......................................... 14

*Salaam v. Stock,*
   2023 U.S. Dist. LEXIS 32017 (N.D.N.Y. 2023)............................................ 14

*Sanchez v. Nassau Cnty.,*
   2023 U.S. Dist. LEXIS 41194 (E.D.N.Y. 2023) ............................... 7, 8, 21, 25

*Smith v. Miller,*
   2017 U.S. Dist. LEXIS 176078 (S.D.N.Y. 2017) .......................................... 13

*Snider v. Dylag,*
   188 F.3d 51 (2d Cir. 1999) ..................................................................... 6, 16

*Stephens v. Venettozzi,*
    2016 U.S. Dist. LEXIS 24123 (S.D.N.Y. 2016) ......................................20, 21

*Stephenson v. Doe,*
    332 F.3d 68 (2d Cir. 2003) ..........................................................................22

*Stewart v. Schiro,*
    2015 U.S. Dist. LEXIS 52962 (E.D.N.Y. 2015)............................................14

*Stubbs v. Dudley,*
    849 F.2d 83 (2d Cir. 1988) ....................................................................6, 19

*Taylor v. City of New York,*
    2018 U.S. Dist. LEXIS 52308 (S.D.N.Y. 2018) ..............................................8

*United States v. Diebold, Inc.,*
    369 U.S. 654 (1962)........................................................................................5

*United States v. Saltzer,*
    2015 U.S. Dist. LEXIS 166453 (D. Idaho 2015) ..........................................12

*Velez v. City of New York,*
    2019 U.S. Dist. LEXIS 128836 (S.D.N.Y. 2019) ......................................8, 17

*Vickers-Pearson v. City of New York,*
    2020 U.S. Dist. LEXIS 175815 (S.D.N.Y. 2020) ..........................9, 10, 11, 20

*Villante v. Vandyke,*
    2008 U.S. Dist. LEXIS 3408 (N.D.N.Y 2008)..............................................26

*Vt. Teddy Bear Co. v. 1-800 Beargram Co.,*
    373 F.3d 241 (2d Cir. 2004) ..........................................................................5

*Walczyk v. Rio,*
    496 F.3d 139 (2d Cir. 2007) ........................................................................25

*White v. Pauly,*
    137 S. Ct. 548 (2017)..............................................................................22, 24

*Williams v. Connell,*
    2018 U.S. Dist. LEXIS 119692 (N.D.N.Y. 2018) (McAvoy, J.) ..................6, 7

*Williams v. McGibbons,*
    2018 U.S. Dist. LEXIS 237313 (N.D.N.Y. 2018)..........................................20

*Williams v. Russo,*
    2009 U.S. Dist. LEXIS 5086 (W.D.N.Y. 2009)..............................................18

*Woodward v. Afify,*
  2018 U.S. Dist. LEXIS 169547 (W.D.N.Y. 2018) ............................................ 8

**Statutes**

42 U.S.C. § 1983 ....................................................................................... 1, 6, 19

**Rules**

Fed. R. Civ. P. 56 ............................................................................................. 5

## PRELIMINARY STATEMENT

Plaintiff Leroy Morrell ("Plaintiff"), is a forty-seven-year-old formerly-incarcerated man. He brings his claims pursuant to 42 U.S.C. § 1983 against Defendants Sgt. Glenn R. Sampson ("Sampson"), and C.O. Patrick H. Boulter ("Boulter") for violating his Eighth Amendment rights against cruel and unusual punishment for failing to protect him from and failing to intervene into an assault by multiple unidentified inmate-porters at Watertown Correctional Facility ("Watertown"), on August 25, 2020. Defendants now move for summary judgment dismissing Plaintiff's complaint in its entirety. Defendants' motion should be denied, since the evidence, viewed in the light most favorable to Plaintiff, at minimum raises triable issues of fact as to whether Defendants knowingly failed to protect Plaintiff from an imminent attack of which they were aware—if now actually orchestrated—and then failed to intervene to stop the attack while it was ongoing.

## STATEMENT OF FACTS

In August of 2020, Plaintiff arrived at Watertown after violating parole in connection with a 2010 conviction for attempted sexual abuse of a minor in the first degree, for which he originally received a three-year sentence with five years of post-release supervision. *See* Plf.'s Statement of Additional Disputed Facts ¶1. Immediately upon his arrival at Watertown, Morrell, who was fairly familiar with facilities run by the New York Department of Corrections and Community Supervision ("DOCCS"), noticed that something was off: when he sat down for what he thought would be a standard, private interview with his assigned counselor, he noticed two correction officers standing in the room; and, being rightfully suspicious, Morrell attempted to keep the interview

quick, but not before his counselor intimated that he was incarcerated for a sex crime against a minor and that he should "not have any contact" with the alleged victim of his crime and the victim's mother. *See id.*

Just days later, when Plaintiff reported to his work assignment at the mess hall, he was approached by seven (7) correctionofficers, some of whom told Plaintiff that they "kn[e]w what the fuck [he was] here for," and that he was a "piece of shit" who shouldn't "fucking come in [their] mess hall." *See id.* at ¶2. Plaintiff returned back to his dorm and, that same day, notified the deputy of programs and one of the sergeants at the facility. Not more than one day later, on August 25, 2020, Plaintiff was inside the small day room of the I-1 dorm typing on a tablet when he spotted Sgt. Sampson speaking with a group of unidentified inmate-porters for multiple minutes, while C.O. Boulter stood approximately six feet away. The inmate-porters and Defendants were situated in full view just outside of the big day room, which envelops the small day room where Plaintiff was sitting, separated only by a door and large, transparent windows. *See id.* at ¶4–5; *see also* Plf.'s Resp. to Defs.' SOMF ¶¶11–14, 22.

After conferring with Sampson, the inmate-porters immediately entered the big day room, then the small day room, and began to viciously assault Plaintiff with socks filled with master locks while Sampson and Boulter stood by and did nothing, fracturing Plaintiff's face and leaving him bruised and bleeding. When Plaintiff attempted to open the door to the small day room so as to escape the assault, the door was locked from the outside, despite the fact that the small day room door was not meant to be locked at that time and that Sampson and Boulter were the only identified officers confirmed present at the I-1 dorm with the keys to the door. *See id.*; *see also* Plf.'s Statement of Additional Disputed Facts ¶¶4–5.

Immediately after Plaintiff got up from being assaulted, he saw Sampson staring him directly in the face through the day room windows before Sampson then proceeded on to the I-2 dorm. Boulter was standing in the same spot he was previously. *See id.* at ¶4. After Plaintiff exited the day room and entered back into the dorm Boulter "pulled a pin" and summoned numerous corrections officers, who violently restrained Plaintiff while exclaiming, "[y]eah, it's the rape-O. What's the—we [are] going to finish him off." The officers told Plaintiff that they were "looking for a reason [to kill him]," that if he "breathe[d] wrong" they would ensure he "wouldn't even make it to medical," and that, if they did make it to the infirmary, Plaintiff should lie and say that he sustained the injuries by falling in the shower. Once at the infirmary, and prior to being sent to an outside hospital following a videocall between the infirmary nurse and an unidentified hospital staff member, Sampson mockingly asked Plaintiff, "didn't we give you adequate medical attention?" and told him that he was "a lucky motherfucker because that phone [to place the videocall] was in here." *See id.* at ¶¶2, 8; *see also* Plf.'s Resp. to Defs.' SOMF ¶¶25–26.

After the incident, both Sampson and Boulter lied in their reports, claiming that they did not witness the assault, and that Plaintiff told them he "slipped in the bathroom and nobody witnessed it." Boulter, for his part, wryly and directly asked Plaintiff immediately after the assault "what happened to [his] face," to which Plaintiff, knowing that Boulter "watched what just happened," sarcastically-if-understandably retorted, "The same thing that['s] been wrong with my face[,] you watched it." *See id.* at ¶¶23–24, 26–27; *see also* Plf.'s Statement of Additional Disputed Facts ¶¶4–7; Sampson generated a false report including statements from C.O.s M. Hudson and J. Rutigliano–who both admitted that Plaintiff had refused his work program at the mess hall out of

fear for his safety because of his crime of conviction–but nevertheless implied that he did not know how Plaintiff received his injuries and that Plaintiff's injuries were consistent with fighting, despite Sampson having been involved in the planning of and aware of the assault against Plaintiff both immediately prior to and during the assault. *See id.* at ¶¶2, 4–5, 8; Plf.'s Resp. to Defs.' SOMF ¶¶22, 25–27.

Now, rather than have their misconduct presented to a jury, Defendants seek to have Plaintiff's claims dismissed on summary judgment. To this end, they present a familiar "ignorance is bliss" argument, contending that Sampson and Boulter knew nothing, did nothing, saw nothing, and therefore cannot be liable for failing to protect Plaintiff from and/or failing to intervene to stop the assault against him. But, as discussed below, viewing the evidence in the light most favorable to Plaintiff, and in the absence of credibility determinations, there exist ample disputed issues of fact that would permit a jury to find that Defendants did, in fact, violate Plaintiff's Eighth Amendment rights, and their motion should be denied accordingly.

## ARGUMENT

### I.    Summary Judgment Standard

Summary judgment is only warranted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (inferences to be drawn from the underlying facts revealed in materials such as affidavits, exhibits, and depositions must be viewed in the light most favorable to the party opposing the motion). It is the initial burden of a *movant* to provide evidence on each material element of his claim or defense, demonstrating that he or she is entitled to relief as a matter of law. *See Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (emphasis added). The non-movant carries "a limited burden of production," but "must demonstrate more than some metaphysical doubt as to the material facts, and come forward with specific facts showing that there is a genuine issue for trial." *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 84 (2d Cir. 2004) (internal quotation marks and citations omitted).

### II.    Eighth Amendment Standard

The Eighth Amendment "imposes a duty on prison officials 'to take reasonable measures to guarantee the safety of inmates in their custody.'" *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994)); *see id.* at 834 ("Being violently

assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.") (internal quotation marks omitted). "[A] state prison guard's deliberate indifference to the consequences of his conduct for those under his control and dependent upon him may support a claim under § 1983." *Morales v. New York State Dep't of Corrections*, 842 F.2d 27, 30 (2d Cir. 1988). "Where a prison inmate has alleged that he was not protected by prison officials, … 'an inmate who is injured as a result of a prison official's deliberate indifference to his safety may maintain a damage action for the deprivation of his civil rights[.]'" *Snider v. Dylag*, 188 F.3d 51, 54 (2d Cir. 1999) (quoting *Stubbs v. Dudley*, 849 F.2d 83, 86 (2d Cir. 1988)). To demonstrate the requisite "deliberate indifference," a prisoner-plaintiff must show that "a prison official acted with 'deliberate indifference' to [their] health or safety.'" *Williams v. Connell*, 2018 U.S. Dist. LEXIS 119692, at *11 (N.D.N.Y. 2018) (McAvoy, J.) (citing *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999)). Plaintiff need not show "'that a prison official failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.'" *Williams*, 2018 U.S. Dist. LEXIS 119692, at *11 (quoting *Blyden*, 186 F.3d at 262) (internal quotation marks and citations omitted). A prisoner could also prevail on a claim that a defendant failed to intervene to protect him from an assault by another prisoner, *see Morales*, 842 F.2d at 30, since "[i]naction by a corrections officer to intercede and halt an attack by a fellow prisoner is [a] sufficient basis for deliberate indifference." *Dizak v. Hawks*, 2015 U.S. Dist. LEXIS 176283, at *12 (N.D.N.Y. 2015).

### III.    Failure to Protect vs. Failure to Intervene

For the purposes of their summary judgment motion, Defendants separately analyze Plaintiff's claim as both a claim for failure to protect and a claim for failure to intervene. *See* Defs.' Mem. Law Supp. Summ. J. (Dkt. No. 29-5), at 6–8. While "[t]he claims are distinct," *Sanchez v. Nassau Cnty.*, 2023 U.S. Dist. LEXIS 41194, at *63 n.35 (E.D.N.Y. 2023)—namely, a failure to protect claim "often arises under circumstances in which prison officials fail to protect prisoners from violence at the hands of *other prisoners*," whereas "[a] claim for failure to intervene, on the other hand, arises when a prison official fails to intervene in a situation where *another official* is violating an inmate's constitutional rights, including the use of excessive force, in [his or her] presence," *Gochnour v. Burri*, 2018 U.S. Dist. LEXIS 239794, at *7-8 (W.D.N.Y. 2018) (emphasis added) (internal quotation marks and citations omitted)—"both claims require a showing that an officer acted with deliberate indifference to a substantial risk of serious harm to an inmate or detainee." *Id.* (internal quotation marks and citations omitted).

This Court has, at least on one occasion, reckoned with the tension between the two claims and found that both claims required a showing that an officer took no action in response to a risk of serious harm to an inmate or detainee. *See Williams*, 2018 U.S. Dist. LEXIS 119692, at *11 (McAvoy, J.) (where defendant corrections officers "were aware that [the assailant inmate] posed a risk to plaintiff, but "allegedly did nothing to halt a situation that seemed likely to cause the tragedy that occurred. …In the end, the Court f[ound] that th[e] matter [wa]s about whether the Defendants are liable … for violating the Eighth Amendment by *failing to protect [plaintiff] and for failing to intervene when he was attacked by a fellow inmate*.") (emphasis added).

7

Other courts within the Circuit have dealt with that same tension in different ways, but have in most cases deemed the two claims at least comparable. *See, e.g.*, *Velez v. City of New York*, 2019 U.S. Dist. LEXIS 128836, at *8 (S.D.N.Y. 2019) ("A claim that an officer failed to protect an inmate from attack *or failed to intervene to stop an attack* rises to the level of a constitutional violation where the officer acted with 'deliberate indifference to a substantial risk of serious harm to an inmate.'") (citing *Taylor v. City of New York*, 2018 U.S. Dist. LEXIS 52308, at *29 (S.D.N.Y. 2018)); *Bradshaw v. Fletcher*, 2023 U.S. Dist. LEXIS 31096, at *27–28 (N.D.N.Y. 2023) (analyzing failure to protect and failure to intervene claims chronologically based on events that occurred before the alleged inmate-on-inmate assault and during the assault); *Johnson v. Lee*, 2019 U.S. Dist. LEXIS 251595, at *7-8 (N.D.N.Y. 2019) (construing allegations of failure to prevent inmate-on-inmate assault as a failure to protect claim, but invoking authorities analyzing failure to intervene claims); *see also Fredricks v. Parrilla*, 2022 U.S. Dist. LEXIS 138038, at *28 (S.D.N.Y. 2022) (construing inmate-on-inmate assault allegations as both failure to protect and failure to intervene claims); *Sanchez*, 2023 U.S. Dist. LEXIS 41194, at *82–83 (same); *Woodward v. Afify*, 2018 U.S. Dist. LEXIS 169547, at *46–47 (W.D.N.Y. 2018) (same).

For purposes of his opposition, Plaintiff considers his claim both a "failure to protect" claim and a "failure to intervene" claim, at least to the extent that those claims both require similar proofs. *See Gochnour*, 2018 U.S. Dist. LEXIS 239794, at *7-8; *Rosen v. City of New York*, 667 F. Supp. 2d 355, 360-61 (S.D.N.Y. 2009) (outlining objective and subjective elements of a failure to intervene claim in an inmate-on-inmate assault context). Plaintiff will identify,

where applicable, authorities used in support of his "failure to protect" claim whose subject matter is a "failure to intervene" claim, and vice-versa.

### A. Failure to Protect

"A failure-to-protect claim requires a showing that prison officials acted with 'deliberate indifference' to the inmate's safety." *Garcia v. Witkowski*, 988 F. Supp. 2d 360, 361 (W.D.N.Y. 2013) (citing *Morales*, 842 F.2d at 30). The deliberate indifference standard for liability has an objective and subjective element. *See Hayes*, 84 F.3d at 620; *see also Ross v. Correction Officers John & Jane Does 1-5*, 610 F. App'x 75, 77 (2d Cir. 2015) (summary order).

The objective element requires that a plaintiff "demonstrate that he is incarcerated under conditions posing a substantial risk of serious harm." *Hayes*, 84 F.3d at 620.[1] The subjective test requires a plaintiff to demonstrate that "the prison official involved [] have acted with a 'sufficiently culpable state of mind.'" *Ross*, 610 F. App'x at 77 (citing *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)). "[C]ulpable intent, in turn, involves a two-tier inquiry. Specifically, a prison official has sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." *Hayes*, 84 F.3d at 620 (citing *Farmer*, 511 U.S. at 847).

---

[1] "The objective prong of a deliberate indifference claim is analyzed in the same manner whether the plaintiff is a pretrial detainee bringing a claim under the Fourteenth Amendment Due Process Clause or a convicted prisoner bringing a claim under the Eighth Amendment." *Vickers-Pearson v. City of New York*, 2020 U.S. Dist. LEXIS 175815, at *12 n.3 (S.D.N.Y. 2020) (citing *Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017) (reciting standard to establish an objective deprivation under "both the Eighth and Fourteenth Amendments")).

### i.    The Objective Element (Substantial Risk of Harm)

Defendants forego an analysis of whether Plaintiff can satisfy the objective element of his failure to protect claim, instead arguing generally that Sgt. Sampson and C.O. Boulter cannot be held liable because they did not "direct[], prompt[], instigate[], or encourage[] an assault against Plaintiff." Defs.' Mem. Law Supp. Summ. J. (Dkt No. 29-5) at 8; *see id.* at 7–8 ("In the instant matter, Plaintiff cannot establish a claim for failure to protect. Most notably, Plaintiff cannot establish that Defendants were deliberately indifferent to his safety … because Plaintiff admits that he did not see either Defendant while the alleged assault was perpetrated[, and] … he did not hear any portion of that conversation [between Sgt. Sampson and the assailant porters].”). Accordingly, the Court should find that Defendants have tacitly conceded that element. Moreover, the evidence at minimum raises a triable issue of fact as to whether there was a "substantial risk of harm" to Plaintiff.

There is no "bright line test" to determine whether a risk of serious harm is "substantial" for Eighth Amendment purposes, *Lewis v. Siwicki*, 944 F.3d 427, 432 (2d Cir. 2019), and the *Farmer* Court "explicitly refused to address at what point a risk of inmate assault rises to the level of a constitutional deprivation." *George v. Burton*, 2001 U.S. Dist. LEXIS 24, at *9 (S.D.N.Y. 2001) (citing *Farmer*, 511 U.S. at 834 n.3)). Ultimately, what matters is whether the "facts, or at least those genuinely in dispute on a motion for summary judgment, show that the risk of serious harm was substantial." *Vickers-Pearson*, 2020 U.S. Dist. LEXIS 175815, at *12 (alterations in original) (citing *Lewis*, 944 F.3d at 432)).

Some of the relevant factors in determining whether the risk of harm was substantial include "'the nature of the prison population with whom [the

plaintiff] was incarcerated,' and whether there was specific information ahead of time suggesting that the plaintiff's safety was in jeopardy." *Id.* For instance, "[e]vidence that a risk was 'obvious or otherwise must have been known to a defendant'" may be sufficient to make this [substantial risk of serious harm] showing," *Ross*, 610 F. App'x at 77 (citing *Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003)). As relevant here, the requirement that a plaintiff demonstrate that he is incarcerated under conditions posing a substantial risk of serious harm is "[c]ertainly met when prison guards simply stand by and permit an attack on an inmate by another inmate to proceed." *George*, 2001 U.S. Dist. LEXIS, at *9 (citing *Davidson v. Cannon*, 474 U.S. 344, 348 (1986), and *Morales*, 842 F.2d at 30). A "substantial risk may [also] be demonstrated … by showing a more general, excessive risk faced by all prisoners in the plaintiff's situation." *Johnson v. Eigo*, 2021 U.S. Dist. LEXIS 120743, at *8–9 (N.D.N.Y. 2021) (citing *Farmer*, 511 U.S. 825 at 843) ("[I]t does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk.")).

Viewing the facts in the light most favorable to Plaintiff, he has adduced sufficient evidence to permit a jury to conclude, through multiple possible avenues, that he was incarcerated under conditions posing a substantial risk of serious harm. They may find, for example, that such a risk arose when two correction officers at Watertown overheard that Plaintiff was convicted of a sex crime against a minor while anomalously and inappropriately sitting in on an interview between Plaintiff and his counselor upon Plaintiff's arrival at Watertown, *see* Plf.'s Statement of Additional Disputed Facts ¶1; or that it arose when Sampson learned even earlier about Plaintiff's conviction while Sampson

11

was interviewing new arrivals at Watertown and cross-referencing their answers with computer records documenting their crimes of conviction, *see id.* at 2, which may have made the risk of harm "personal to [Plaintiff]" *and* "because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. 825 at 843. *See, e.g., Dean v. Doe*, 2017 U.S. Dist. LEXIS 78266, at *14 (W.D.N.Y. 2017) ("The Second Circuit … acknowledged in *Arnold* that prisoners accused of sex crimes 'are at greater risk of assault by other inmates' …, and 'a substantial risk of harm can exist for purposes of deliberate indifference, regardless of whether a direct threat or attack actually occurs.'") (citing *Arnold v. Cty. of Nassau*, 252 F.3d 599, 601 (2d Cir. 2001)); *Mirabella v. Corr. Officer O'Keenan*, 2016 U.S. Dist. LEXIS 120811, at *10 (W.D.N.Y. 2016) (finding that a corrections officer's alleged "identifying [of] a prisoner as a sex offender or child molester … made [the plaintiff] a target …"); *Dean v. Robinson*, 2023 U.S. Dist. LEXIS 26470, at *15 (W.D.N.Y. 2023) ("Defendants concede that, under different circumstances, identifying a prisoner as a child molester in an incarcerated setting might create a risk of harm that is sufficiently serious to give rise to a constitutional violation.").[2] The jury may find, in addition or in the alternative, that such a risk arose when Plaintiff arrived for his work program at the mess hall and was told, in sum and substance, by approximately seven (7) correction officers, including C.O.s Hudson and Rutigliano, that they "kn[e]w what the

---

[2] "Indeed, courts in the Third Circuit 'have found that the mere act of labeling a prisoner a snitch or child molester satisfies *both* the objective and subjective elements of an Eighth Amendment deliberate indifference claim.'" *Dean*, 2017 U.S. Dist. LEXIS 78266, at *14 (emphasis in original) (citing *Horan v. Collins*, 2016 U.S. Dist. LEXIS 105046 (M.D. Pa. 2016) (collecting cases)); *see Cepero v. High Desert State Prison*, 2015 U.S. Dist. LEXIS 37838 (D. Nev. 2015) ("The notion that sex offenders face greater risks of violence … is neither new nor farfetched."); *see also United States v. Saltzer*, 2015 U.S. Dist. LEXIS 166453 (D. Idaho 2015) ("[I]t is common knowledge that sex offenders face an elevated risk of abuse in prison.").

fuck [Plaintiff was] here for," and that he was a "piece of shit" who shouldn't "fucking come in [their] mess hall." *See* Plf.'s Statement of Additional Disputed Facts ¶2. They may find that such a risk arose when Plaintiff notified the deputy of programs and area sergeant of the events that had just taken place in the mess hall. *See id.; see also Garcia*, 988 F. Supp. 2d at 362 ("[I]n failure to protect cases, a prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific harm to his safety.").

Therefore, no matter the route, a reasonable jury could arrive to the conclusion that Plaintiff was incarcerated under conditions posing a substantial risk of serious harm, and the Court should therefore find that Plaintiff has satisfied the objective element of his failure to protect claim. *See, e.g.*, *Mirabella v. O'Keenan*, 2018 U.S. Dist. LEXIS 130019, at *8 (W.D.N.Y. 2016) (denying summary judgment and finding that "the allegations that [defendant] purposefully informed other inmates of the nature of [plaintiff]'s charges in order to incite violence against him satisfies the first—objective—prong of the Eighth Amendment inquiry.") (citing *Smith v. Miller*, 2017 U.S. Dist. LEXIS 176078, at *32 (S.D.N.Y. 2017) ("[T]here is no question that instructing or encouraging other [inmates] to attack an inmate poses an objectively serious risk of harm.")).

### ii.    The Subjective Element (Culpable State of Mind)

To satisfy the subjective element, a plaintiff must establish that the prison official knew of a substantial risk to inmate health or safety and nonetheless disregarded it. *Matagrano v. LeVitt*, 2023 U.S. Dist. LEXIS 110110, at *12 (W.D.N.Y. 2023) (citing *Farmer*, 511 U.S. at 837). The official must both be aware of facts from which the inference could be drawn that a substantial risk

of serious harm exists, and he must also draw the inference. *See id.* Direct evidence that prison officials knew of and disregarded a serious risk of harm to a prison inmate will rarely be available. *Matthews v. Armitage*, 36 F. Supp. 2d 121, 125 (N.D.N.Y 1999) (citation omitted). However, "[a] defendant's knowledge can be established through inference from circumstantial evidence, including from the very fact that the risk was obvious." *Matagrano*, 2023 U.S. Dist. LEXIS 110110, at *12 (citing *Murphy v. L.A. Spaulding*, 2022 U.S. Dist. LEXIS 18267, at *14 (S.D.N.Y. 2022) (internal quotation marks and citation omitted)).

There is a clear and obvious, material disputed fact as to whether Sgt. Sampson and C.O. Boulter, at minimum, "watched as [Plaintiff] was attacked … and did nothing." *Salaam v. Stock*, 2023 U.S. Dist. LEXIS 32017, at *21 (N.D.N.Y. 2023). While Defendants both claim they did not witness the assault, Plaintiff is unequivocally sure that they did, and this alone should be enough to preclude summary judgment. *See Mills v. Fenger*, 216 F. App'x 7, 10 (2d Cir. 2006) ("[T]he state of the defendant's knowledge is normally a question of fact to be determined after trial.") (internal quotation marks omitted); *Ruderman v. Law Office of Yuriy Prakhin*, 2022 U.S. Dist. LEXIS 244375, at *2 (E.D.N.Y. 2022) ("The parties' submissions reflect the precise type of 'he said, she said,' on which the court cannot … take a side at the summary judgment stage.") (citing *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010)); *see also Stewart v. Schiro*, 2015 U.S. Dist. LEXIS 52962, at *23 (E.D.N.Y. 2015) ("[U]nder certain circumstances, the commencement of an inmate-to-inmate altercation could put a prison official on sufficient notice to render the prison official deliberately indifferent if he or she then fails to intervene in an appropriate manner").

14

What's more, this is not only a case where a jury could reasonably conclude that Defendants did nothing; a jury could *also* conclude that Defendants in fact "instigat[ed] and encourage[ed] a violent attack," which "plausibly suggests *at least* deliberate indifference." *Jenkins v. Officer S.*, 2021 U.S. Dist. LEXIS 183276, at *10 (S.D.N.Y. 2021) (emphasis added); *see Jhagroo v. Brown*, 2020 U.S. Dist. LEXIS 13430, at *22 (S.D.N.Y. 2020) ("[I]ntentionally exposing an inmate to the risk of harm … [through violence] with no penological purpose is indicative of deliberate indifference to the inmate's safety in violation of the Eighth Amendment to the U.S. Constitution.") (alterations in original); *Mirabella*, 2016 U.S. Dist. LEXIS 120811, at *11 (noting that "intentional exposure to harm is indicative of deliberate indifference to the inmate's safety at best and manifests an intent to harm the inmate at worst.").[3] Here, it is undisputed that the door to the small day room in which Plaintiff was assaulted was not supposed to be locked at that time. *See* Morrell Dec. ¶9; Plf.'s Statement of Additional Disputed Facts ¶5 It is also undisputed that Sampson and. Boulter were the only identified officers in the I-1 dorm who had the keys to that door. *See id.* Viewing the facts in the light most favorable to Plaintiff, a jury could reasonably conclude that Plaintiff's inability to escape the assault was due to the small day room door being locked, and that Sampson and/or Boulter were, at best, deliberately indifferent towards Plaintiff's suffering, or, at worst, actively contributed toward it. *Cf., e.g., Fischl v. Armitage*, 128 F.3d 50, 56 (2d Cir. 1997) (reversing district court grant of summary judgment, finding that

---

[3] "Implicit in this analysis is the understanding that inmates are influenced by the attitudes and actions of those in a position of authority over them. In other words, there is a qualitative difference between knowing generally that a fellow inmate is a sexual offender and witnessing a law enforcement officer derogatorily refer to a fellow inmate as a "child molester" and a "monster," and those two experiences would have different impacts in terms of increasing the likelihood of attack." *Dean v. Robinson*, 2023 U.S. Dist. LEXIS 26470, at *16-17 (W.D.N.Y. 2023).

"the district court['s] conclu[sion] that it would be unreasonable to determine that defendant Marshall opened the cell door based on[] the single fact that he was the company officer on that date, in part because seven other correctional officer also had keys" was "plainly [] based on the drawing of inferences in favor of [defendant] rather than in favor of [plaintiff]"; and because "it would surely be permissible for the jury to infer that the officer who opened [the door] or permitted it to be opened was the only officer who was then responsible … and who in fact was in that control area for most of the morning[,] [t]he record would thus permit a reasonable juror to find either that [defendant] opened the cell door for the inmates himself, or that he was in the vicinity of the ongoing attack and, despite [plaintiff]'s shouts, knowingly did nothing to stop it."); *see Snider*, 188 F.3d at 55 (reversing dismissal of failure to protect claim where plaintiff plausibly alleged that "this [wa]s a situation where a prison official allegedly decided that [plaintiff], for whatever reason, was not 'worthy' of the official's protection, and may have "conveyed this sentiment to other inmates, to ensure that whoever wanted to abuse [plaintiff] would know that he could proceed unimpeded.").

Likewise, a jury could reasonably infer that the responding correction officers' threats to Plaintiff–i.e., that he should tell the nurse that he sustained his injuries by falling in the bathroom with no witnesses–sufficiently resembles the false reports made by Sampson and Boulter–i.e., that Plaintiff told them he sustained his injuries by falling in the shower and that nobody witnessed it, despite them witnessing the actual assault–to support the conclusion that Sampson and Boulter engaged in a cover-up or other form of malfeasance in an attempt to hide their wrongdoing, which would evince the subjective, culpable state of mind requirement required to prove a failure to protect. *See*

*Hill v. City of New York*, 2005 U.S. Dist. LEXIS 38926, at *16-17 (E.D.N.Y. 2005) (denying summary judgment despite lack of direct evidence where "the *circumstantial* evidence–in the light most favorable to plaintiff–does suggest that there was an agreement between state actors to falsify testimony and cover-up [a constitutional violation]."). For the foregoing reasons, Defendants' motion for summary judgment as to Plaintiff's failure to protect claim should be denied.

### B. Failure to Intervene

"Allowing an attack on an inmate to proceed without intervening is a constitutional violation in certain circumstances." *Rosen*, 667 F. Supp. 2d at 359. Indeed, "[j]ust as prison officials may be liable for failing to protect an inmate from an assault of which they had knowledge or should have had knowledge, they also may be liable for failing to intervene in an assault." *Velez*, 2019 U.S. Dist. LEXIS 128836, at *8 (citation omitted). In the context of a failure to intervene claim, "[c]ourts may ask whether a defendant observed or had reason to know the plaintiff was involved in a physical altercation and had an extended opportunity to stop the attack but failed to take any action to do so." *Blake v. Sexton*, 2016 U.S. Dist. LEXIS 38798, at *9 (S.D.N.Y. 2016) (alterations and internal quotation marks omitted). In *Rosen*, for example, the court "[took] the objective and subjective elements [of an Eighth Amendment claim] into account" in defining the contours of a failure to intervene claim in an inmate-on-inmate context:

> [A] failure to intervene claim succeeds where the plaintiff shows (1) that [the officer] observed or had reason to know that the Plaintiff was involved in a physical altercation with another inmate; (2) that [the officer] had a reasonable opportunity to intervene to prevent the attack from continuing. …(3) that in failing to intervene [the officer was]

> deliberately indifferent to a substantial risk of harm
> to Plaintiff; and (4) that [the officer's] deliberate in-
> difference to a substantial risk of harm was a risk
> that caused Plaintiff some harm.

*Id.* at 360 (citing *Williams v. Russo*, 2009 U.S. Dist. LEXIS 5086, at *11–12 (W.D.N.Y. 2009)).

Viewing the evidence in the light most favorable to Plaintiff, a jury could infer from: the fact that Plaintiff saw Sampson conferring with the assailants just outside of the day room immediately prior to the assault; that both Sampson and Boulter were both present during and after and in position to observe the entire assault; and that the door to the small day room was locked from the outside, and reach the conclusion that Sampson and/or Boulter observed or had reason to know Plaintiff was involved in a physical altercation and had an extended opportunity to stop the attack but failed to take any action to do so.

The facts here are similar, in some respects, to a number of useful authorities. The aforementioned *Rosen* court, for example, denied defendants' summary judgment motion as to plaintiff's failure to intervene claim under similar circumstances.

> Considering this fact-intensive inquiry, Defendants
> cannot satisfy their burden of proving that no genu-
> ine issue of material fact exists. First, there is an is-
> sue of fact as to what, if anything, [defendant] saw
> of the fight. Defendants assert that [plaintiff] did not
> observe any officers while the fight was taking place,
> but [plaintiff] alleges he saw [defendant] in a posi-
> tion where [he] could see the fight. Second, if [de-
> fendant] observed the fight, as [plaintiff] alleges,
> there is a dispute as to how long [defendant] was
> watching the fight, and whether he had a reasonable
> opportunity to intervene, giving due consideration to
> his own safety. *See Pearson v. Correction Officer*
> *Principe*, No. 97 Civ. 3746, 1999 U.S. Dist. LEXIS

1294, 1999 WL 66521, at *1 (S.D.N.Y. Feb. 9, 1999) ("Perhaps, [the officer] can offer a plausible explanation for the failure to intervene in a timely fashion, assuming that the plaintiff's version of events is accurate. But, the plausibility of any explanation is an issue of fact for the jury."). The parties disagree as to the character of the fight; although [plaintiff] asserts that he was beaten by a group of gang members, Defendants describe the fight as between only [the inmate-assailant] and [plaintiff]. Without resolving that factual dispute, it is impossible for the Court to assess the danger posed to other inmates and [defendant] in deciding whether he had a reasonable opportunity to intervene.

Third, if [defendant] did have a reasonable opportunity to intervene, and failed to do so, there is a factual question as to whether [defendant's] inaction rose to the level of deliberate indifference. *See Stubbs*, 849 F.2d at 86 (holding that jury could have reasonably found officer displayed deliberate indifference where he failed to "prevent the beating of [the plaintiff] despite having had the opportunity to do so"). Finally, if [defendant] was deliberately indifferent, a factual question exists as to whether his deliberate indifference caused at least some of [plaintiff]'s injury. Accordingly, Defendants' motion for [**13] summary judgment must be denied with respect to [plaintiff]'s deliberate indifference to safety claim brought pursuant to § 1983.

*Id.* at 360–61; *cf. Brown v. Chappius*, 2016 U.S. Dist. LEXIS 107149, at *24 (W.D.N.Y. 2016) (dismissing failure to intervene claim where plaintiff was assaulted by inmate-porters in large part because "[p]laintiff does not allege that [defendants] were close enough to the shower as to realistically be able to intervene in the assault …"); *see Stubbs*, 849 F.2d at 87 (where a correction officer "had adequate time to assess the serious threat facing [the inmate] and a fair opportunity to afford him protection at no risk to himself or the security of the prison but nevertheless callously refused to permit [the inmate] to pass with him to safety behind the administration door," the officer's conduct "could

19

reasonably be found to be deliberate indifference, tantamount to a knowing willingness that the harm occur.") (internal quotation marks and brackets omitted); *see also Blake v. Kelly*, 2014 U.S. Dist. LEXIS 119090, at \*15–16 (S.D.N.Y. 2014) ("[T]he [*Heisler*] court found that the plaintiff's allegations raised a genuine issue of material fact where the plaintiff alleged that another inmate attacked him[,] … and that officers witnessed the assault, but failed to intercede to stop it.") (citing *Heisler v. Kralik*, 981 F. Supp. 830, 837 (S.D.N.Y. 1997)); *Stephens v. Venettozzi*, 2016 U.S. Dist. LEXIS 24123, at \*54–55 (S.D.N.Y. 2016) (noting, in a failure to intervene context, that "[defendant]'s proximity to the alleged assault, and his status as a sergeant (and thus a supervisory officer), further support the inference that he could have curtailed [the violent conduct]."); *McCoy v. Goord*, 255 F. Supp. 2d 233, 262 (S.D.N.Y. 2003) (noting that correction sergeant's proximity to assault and supervisory position gave him the opportunity to prevent use of force).[4]

Also instructive in this context is *Mirabella v. O'Keenan*, 2018 U.S. Dist. LEXIS 130019 (W.D.N.Y. 2018), where an inmate who was convicted of a sexual offense against a minor was assaulted by unknown inmates in the presence of corrections officers. Despite the defendants' claim that the assault was a complete surprise, the court denied summary judgment due to, *inter alia*, evidence of "the incendiary nature of [the plaintiff's] charges and the acknowledgment that inmates with such charges are more likely to be attacked," "the temporal proximity between" the incitement and the attack, comments made to

---

[4] *Cf. Williams v. McGibbons*, 2018 U.S. Dist. LEXIS 237313, at \*10 (N.D.N.Y. 2018) (dismissing claim for failure to protect where defendant "immediately intervened and instructed [the parties] to stop fighting"); *Vickers-Pearson*, 2020 U.S. Dist. LEXIS 175815 (finding that officer was not indifferent to the risk of harm to plaintiff, once he became aware of it because he "responded quickly").

the plaintiff by defendants "shortly after the attack," that defendant was "present at the time of the attack," and that the plaintiff "could not identify his attacker." *Id.*, at \*8–9. The same is true in the case of *Stephens v. Venettozzi*, 2016 U.S. Dist. LEXIS 24123 (S.D.N.Y. 2016), which entailed a failure to intervene claim. The court there analyzed a similar set of facts and concluded that the plaintiff alleged a sufficient degree of inaction by the defendant officers to state an Eighth Amendment claim.

> [Defendants] argue that Plaintiff's allegation that they stood outside the room where [the assailant] assaulted Plaintiff does not suggest that they could see or hear what was happening inside the room, such that they could have had knowledge of the assault or an opportunity to prevent it. (Def. Mem. at 20-21; Def. Reply at 9-10.) This argument is unpersuasive, as, liberally construed, the Amended Complaint sufficiently alleges that, regardless of whether they could see or hear what was happening inside the room, [Defendants] were nonetheless aware of what was occurring and was either complicit in the assault or did nothing to prevent it. …

> With respect to the conduct of [Defendants], Plaintiff alleges that … both of these defendants remained posted "directly outside" the door of the room for the duration of the assault. (Am. Compl. ¶¶ 264, 266.). …Even apart from Plaintiff's description as to where [Defendants] were stationed during the alleged assault, Plaintiff alleges that [the assailant] was "in the company" of these two officers. (*Id.* ¶¶ 261, 264.). …Further, Plaintiff alleges that, when he finally exited the room after the alleged assault, he observed [Defendants] "standing immediately outside [the room], smiling."

*Id.*, at \*58-60; *see Sanchez*, 2023 U.S. Dist. LEXIS 41194, at \*85-87 (denying summary judgment where "[defendants] contend[ed] that neither defendant saw the assault nor learned of the assault until the end of the recreation period," because even though "[t]he parties agree[d] that Defendants [] were in

the shack in the recreation yard, and it is undisputed that the shack was see-through with plexiglass walls and overlooked the entire yard … [t]he parties [] dispute (1) the extent to which Defendants Hollingshead and James could see detainees in the yard from the shack; (2) whether they saw anything about the attack; and (3) when they responded to Plaintiff," creating disputed facts "that c[ould] not be resolved by the Court at summary judgment … as to whether Defendants … had "adequate time to assess a serious threat" against Plaintiff before and during the attack, and whether they had time to intervene.).

For the reasons set forth above, Defendants' motion for summary judgment as to Plaintiff's failure to intervene claim should be denied. *See also supra* Section I (analyzing objective and subjective components in failure to protect context).

## IV.     Qualified Immunity

Neither should Defendants be entitled to qualified immunity. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (internal quotation omitted). It is a "difficult concept … look[ing] to the reasonableness of an officer's belief that he acted lawfully after the officer is found to have been unreasonable in his conduct," which "inherently makes for confusion." *Stephenson v. Doe*, 332 F.3d 68, 80 n.15 (2d Cir. 2003) (citation omitted). This becomes arguably more confusing in a deliberate indifference context. *See, e.g.*, *Locurto v. Safir*, 264 F.3d 154, 169 (2d Cir. 2001) (noting that "the qualified immunity doctrine [normally] focuses only on whether the government official's actions were objectively reasonable in light of clearly established law, without regard for possible subjective [considerations,] … [b]ut [that] where a more specific

intent is actually an element of the plaintiff's claim as defined by clearly established law, it can never be objectively reasonable for a government official to act with the intent that is prohibited by law.") (citing *Crawford-El v. Britton*, 523 U.S. 574, 587–89, 592 (1998) ("Thus, although evidence of improper motive is irrelevant on the issue of qualified immunity, it may be an essential component of the plaintiff's affirmative case.")). A court's qualified immunity analysis must address two questions. First, did the defendant violate a statutory or constitutional right? Second, was the right "clearly established" at the time of the challenged conduct? *Gordon v. Drummond*, 2021 U.S. Dist. LEXIS 220512, at *26-27 (S.D.N.Y. 2021) (citing *Jones v. Treubig*, 963 F.3d 214, 224 (2d Cir. 2020)).

For the reasons discussed in the previous sections, there remain disputed issues of fact that preclude a summary disposition as to whether or not Defendants violated Plaintiff's Eighth Amendment rights by failing to protect him from and/or failing to intervene into an assault. *See, e.g.*, *Robinson v. Taylor*, 2017 U.S. Dist. LEXIS 137233, at *17 (N.D.N.Y. 2017) (denying summary judgment on qualified immunity grounds where "resolution of the objective reasonableness of Defendants' actions 'depends on the determination of certain factual questions that cannot be answered at this stage of the litigation.'") (quoting *Denton v. McKee*, 332 F. Supp. 2d 659, 666 (S.D.N.Y. 2004)); *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 725 (S.D.N.Y. 2017) ("Ultimately, therefore, summary judgment on qualified immunity grounds is not appropriate because there are unresolved facts that are material to a determination of the reasonableness of the officers' conduct."); *see also Jefferson v. Reddish*, 718 F. App'x 94, 96 (2d Cir. 2018) (summary order) ("[G]enuine disputes of material fact preclude our determining as a matter of law whether defendants are

entitled to qualified immunity."); *Newkirk v. Cnty. of Suffolk*, 2022 U.S. Dist. LEXIS 48686, at *20 (E.D.N.Y. 2022) ("In view of the conflicting evidence creating disputed issues of fact, the Court denies Defendants' motion for summary judgment based on qualified immunity.").

As for the second question, the Supreme Court has explained that a right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1978). While those rights "should not be defined at a high level of generality," *White*, 137 S. Ct. at 552 (citation omitted), "the very action in question [need not have] previously been held unlawful." *Anderson*, 483 U.S. at 640 (citation omitted). Rather, "in the light of pre-existing law[,] the unlawfulness must [have been] apparent." *Id.* There is no requirement that there be "a case directly on point." *White*, 137 S. Ct. at 551 (citation omitted).

As an initial matter, Defendants' qualified immunity argument is largely duplicative of their arguments against Plaintiff's claims, and should be denied at the threshold. *See Jenkins*, 2021 U.S. Dist. LEXIS 183276, at *12-13 ("Defendant argues that he is entitled to qualified immunity. However, to the extent Defendant applies the law of qualified immunity to Plaintiff's failure to protect claim, he only repeats arguments from elsewhere in his brief. ...Defendant has not identified any ambiguity in the applicable legal standard. Nor is the law regarding failure to protect inmates unsettled or unclear.") (internal quotation marks and citations omitted). Regardless, in August of 2020, when Plaintiff was assaulted, it was clearly established that prison guards had a duty to protect incarcerated individuals from substantial risks of serious harm of which they were or should have been aware. *See Blake*, 2016 U.S. Dist.

LEXIS 38798, at \*18 ("Correction officers have a clearly established duty to protect prisoners from violence at the hands of other prisoners.") (citing *Dennis v. Westchester Cty. Jail Corr. Dep't*, 485 Fed. App'x 478, 481 (2d Cir. 2012)); *Sanchez*, 2023 U.S. Dist. LEXIS 41194, at \*73-74 ("It has long been 'clearly established' that '[p]rison officials have a duty … to protect prisoners from violence at the hands of other prisoners.' Indeed, the Second Circuit has stated plainly that '[i]n the prison context, the clearly established standard for [a failure to protect] claim is that the official acted with deliberate indifference toward the safety of the prisoner.'") (citing *Hayes*, 84 F3d at 620–21, and *Darnell*, 849 F.3d at 35 ("[D]eliberate indifference occurs where a 'defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety.'")); *Morales*, 842 F.2d at 30 (holding that a valid deliberate indifference claim exists when a correctional officer is on notice of an impending assault and does nothing to prevent or mitigate the risk that the assault will occur.).[5]

The case law also encompasses the facts of this case. For instance, in *Jhagroo v. Doe*, 2020 U.S. Dist. LEXIS 13430 (S.D.N.Y. 2020), the court

---

[5] *See Paul v. LaValley*, 712 F. App'x 78, 79–80 (2d Cir. 2018) (summary order) ("[A] police officer who violates clearly established law necessarily lacks an objectively reasonable belief that his conduct was lawful. We clarify here that the two are part of the same inquiry, not independent elements as some cases suggested.") (citing *Okin v. Vill. of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 433 n.11 (2d Cir. 2009)); *Nagle v. Marron*, 663 F.3d 100, 115 (2d Cir. 2011) ("The focus ... remains on whether, at the time of the alleged conduct, the right was clearly established, *rendering it objectively unreasonable* for an official to think that his action was lawful."); *Walczyk v. Rio*, 496 F.3d 139, 166 (2d Cir. 2007) (Sotomayor, J., concurring) ("[W]hether a right is clearly established is *the same question* as whether a reasonable officer would have known that the conduct in question was unlawful.")) (emphases in original).

considered a failure to protect claim in an inmate-on-inmate assault context where, somewhat similar to here, there was "a dispute as to whether an assault took place [and] [w]hether [Defendants] observed the assault," with the plaintiff claiming that "both Defendants watched the assault take place," and that "he was knocked to the ground, punched, kicked, and beaten with a table and chair" while "neither [Defendant] intervened in any assault." *Id.*, at *14. Ruling on summary judgment, the court denied the defendants' motion for qualified immunity, ruling that "[a]n assault such as that described by [plaintiff] could undoubtedly have exposed [plaintiff] to a substantial risk of harm. Likewise, those charged with the protection of prisoners are clearly prohibited from intentionally causing prisoners to assault one another. Upon the facts alleged by Plaintiff, no reasonable correction officer would mistake Defendants' constitutional obligation to take reasonable steps to stop the assault once they saw it begin. A correction officer's decision to stand and watch a fight between prisoners 'like he was in the movie theaters,' act 'like it was a normal day,' or actively facilitate the violence, is not a reasonable mistake as to an officer's constitutional duty, but a willful dereliction." *See Blake*, 2016 U.S. Dist. LEXIS 38798, at *19 (denying qualified immunity and noting that although "the fact that the attack may have been a 'surprise' *may* absolve the Defendant from failing to prevent it, [] it does not permit him to do *nothing* when he is a witness to the attack and in a position to stop it. Whether he was a witness and in a position to stop it are disputed material facts. Because of that dispute, the Court is unable to conclude that Defendant's actions were objectively reasonable as a matter of law.") (citing *Villante v. Vandyke*, 2008 U.S. Dist. LEXIS 3408, at *9 (N.D.N. Y 2008) ("Since [p]laintiff has raised an issue of fact about whether [d]efendants stood by and allowed other inmates to attack him … [d]efendants are not entitled to qualified immunity")). Accordingly,

Defendants should not be entitled to qualified immunity or summary judgment on those grounds.

## CONCLUSION

Based on the foregoing, it is respectfully requested that Defendants' motion for summary judgment be denied in its entirety, together with such other and further relief as is just, proper, and equitable.

Dated: New York, New York
        November 3, 2023

<div style="margin-left:40%">

s/ Edward Sivin
Edward Sivin
Bar Roll Number: 514765
Sivin, Miller & Roche LLP
Attorneys for Plaintiff
20 Vesey Street, Suite 1400
New York, NY 10007
Telephone: (212) 349-0300
E-mail: esivin@sivinandmiller.com

</div>

27